UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Clara Akalarian | : |
| Frances Burt, | : |
| Vincent and Myra Ferla | : |
| Souhail Khoury, | : |
| Laura Obering | : |
| Edward and Joy Stoltenberg | : |
| James Wills | ; |
| Plaintiffs | : |
| Vs. | :   CASE No. 11-427 |
| | : |
| Wells Fargo, et al | : |
| Defendants | : |
| | : |

**PLAINTIFFS'MEMORANDUM IN SUPPORT OF PLAINTIFFS'OBJECTIONS TO THE UNAUTHORIZED USE AND OCCUPANCY FEE AND THE UNAUTHORIZED ORDER TO DISMISS AND OTHERWISE TO SHOW CAUSE FOR THEIR OBJECTIONS.**

**Plaintiffs Object to the Use and Occupancy Fees:**

Pursuant to Rule 53 (f) of the Federal Rules of Civil Procedure, the Plaintiff objects to the "order" of September 28, 2012 (doc. #1343, filed on October 10, 2012)to pay "use and occupancy fees" to the Special Master and the subsequent recommendation (doc. #1361))that Plaintiff's complaint be dismissed for the Plaintiff's alleged failure to conform to the non-judicially authorized requirement of the Master that the Plaintiff's pay a 'use and occupancy" monthly fee to the Master for the use of the Plaintiff's own property"

Apparently the only purpose of the occupancy fee order is to show alleged *credit worthiness* for a new mortgage note which has yet to be offered to the Plaintiffs.

Plaintiffs herein  show cause for the use fees proposals to be rejected.(Doc. #1368) and not enforced.

**Background:**

Plaintiffs have filed a title clearing suits challenging the constitutionality of foreclosure by advertising in C.A. #11-418 and are members of the class action case challenging the statutory standing of mortgage servicers to conduct foreclosures by advertising in C.A. 11-427.

Each of the following Plaintiff s, noted in October 10, 2012 order of the Special Matter, object to, and, challenge the occupancy fees, whether or not they are making payments, or whether they have written hardship letters. The deadlines for making payments required by the Special Master have passed.

> Timothy Noiseux-C.A. 418 and CA 427;
> Dina Maccarone-C.A. 421 and C.A. 427;
> Ed and Joy Stoltenberg-C.A. 427;
> Lorraine Tokarski-11-645 and C.A. 11-427;
> Keith and Carleen Coelho-C.A.11-657 and C.A. 11-427;
> Todd Giroux-C/A. 12-015 and C.A. 11-427;
> Joseph and Dorothy Pearl C.A. 12-028;
> Mercedes Mendez-C.A. 11-413; C.A. 11-427;
> Clara Akalarian-C.A. 11-427;
> Francis Burt-C.A. 11-427;
> Vincent and Myra Ferla-C.A. 11-427;
> Souhail Khoury-C.A. 11-427;
> Laura Obering-C.A. 11-427;
> James Wills, III-C.A. 11-427;

In those cases Plaintiffs contends that the Defendants do not own a signed mortgage note and similar mortgage deed and cannot otherwise foreclose. They contend that the Special Master has no basis in law to dispute the legal merits of the claims of the Plaintiff or to recommend the dismissal of their duly filed complaints.

Plaintiffs contend that the Defendants who do not own the mortgage notes are gaming the mediation system by not making offers other than keys for token payments of cash. Defendants are not mediating; therefore, Plaintiffs should not be forced to cooperate with a mediation system

that is not functioning. Defendants appear to have no interest in mediation process. Every Defendant is challenging the mediation process in First Circuit.

Occupancy fees only benefit the Defendants who have no standing to conduct a judicial foreclosure under R.I.G.L. §34-27-1 and have made no offers to settle. There is no legal basis for the Plaintiffs to be ordered to pay to the Special Master "use and occupancy fees" to hold in trust until the litigation is completed. Occupancy fees tilt the objectivity of the Special Master toward Defendants who are mainly mortgage servicers, and not Trustees. Such a biased requirement to show "credit worthiness" is a denial of due process to the Plaintiffs. It creates an additional burden for access to courts. It also presumes litigation has been completed in favor of the Defendants. Plaintiffs contend that the Defendants failure to follow the provisions of chapter 11 of title 34 means that any mortgage note is unsecure and cannot be foreclosed by advertising.

**Plaintiffs Support the New Note Option Consistent with Value and Hardship Exceptions**:

The Plaintiffs support Mediation Master's suggestion of a new note consistent with the value of the Plaintiff's properties. The Plaintiffs further agree with the proposal of Plaintiffs Joseph and Dorothy Pearl, and other Plaintiffs who have written hardship letters, that a more equitable payment schedule should be developed by the Court for the Master should the Court find that the use and occupancy fees are constitutional and otherwise authorized by law.

If the Court should approve occupancy fees, the Court should provide a fair standard for the use of the Special Master when reviewing hardship letters. The Court should consider maintaining a use and occupancy ratio to the net income of the Plaintiff occupying the premises. For example, use and occupancy fees should not exceed more than twenty five (25%) per cent of the net income of the occupants.

Plaintiff otherwise agrees with the common sense suggestion of the Special Master that that it would be in the best interest of Defendants, which actually owns the assigned notes and mortgage deeds securing those notes, to cancel such note and to offer the Plaintiffs occupying the property a mortgage note at a current interest rate whose value does not exceed the actual value of the property.

It must be blatantly obviously, i.e., *res ipsa*, to all Defendants that a foreclosure by advertising through R.I.G.L§34-11-22, or a foreclosure through R.I.G.L. §34-27-1, will not increase the actual value of the property and of the actual value of the resale of the property at current interest rates. Appraisals suggest that most mortgage deeds now secure an amount which exceed the value of the property by at least fifty (50%) percent. It is in the public interest that owners, the Plaintiffs, do not become homeless burden on the public fisc; and that they be allowed to continue to make affordable payments. Such a proposal makes the mortgage lending market realistic and viable. Dismissals are not in the public interest.

**Mediation Goals Are Undermined by the Servicers' Conflict of Interest and the, Defendants' Bad Faith:**

Apparently the majority of Defendants are refusing to mediate in good faith because they are mortgage servicers who do not own the mortgage note and make more money through foreclosures than by settlements because of the terms of their pooling and service agreements. Thus, mortgage servicers have a conflict of interest with the Defendant Trustees and their beneficiaries which actually own the mortgage notes. Some pooling and service agreements between the mortgage servers and the Trustees for the Securitized Trust are available on line in EDGAR. Defendants who do not desire to mediate should be allowed to file petitions for judicial foreclosure in State Court. Plaintiffs will then have the opportunity to challenge the mortgage servicers who do not own the promissory notes and use the name of the Mortgage Electronic

Registration System, Inc. (MERS), as a pretext for evading R.I. recording requirements which statutory system does not allow fillings by non-parties.

  The MERS Defendants are no more than name rental purchasers who otherwise do not have standing to record mortgage deeds, assignments and foreclosure deeds. MERS and Servicers are not entitled to receive occupancy fees. Mortgage servicers are only allowed to perform five (5) statutory functions and those functions do not include foreclosures, assignments, or collecting occupancy fees. *R.I.G.L.§34-26-8* authorizes mortgage servicers for trustees of securitized trusts, which were the last entity to receive payments from the mortgagors, to file an affidavit on the land records discharging the mortgage deed which the mortgagor was paying. *R.I.§ 19-9-9* requires mortgage servicers to provide within five (5) days an exact pay-off of the mortgage debt and to provide within thirty (30) days a discharge of the mortgage deed whose mortgage note is paid. *R.I.G.L. §44-5-7* permits mortgage servicers to pay property taxes in installments. *R.I. § 34-28-17.1* declares that a *mortgage servicer* is not a necessary party to a motion to dismiss an invalid mechanic's lien. *R.I.G.L. § 5-79-1(3)* ((viii) declares that a *mortgage servicer* is not subject to regulation as a mortgage consultant. However, requirements of occupancy fees only benefit Mortgagees' sham proceedings. Dismissal of the Plaintiff's complaints for failure to pay needless fees are not only not authorized by law, but the underlying legal and economic corruption caused by MERS involvement in the Wall Street crash are not solved by dismissals of the Plaintiff's complaint. The public interest is harmed.

**Legal Standards of Review Are DeNovo:**

  This Court must review all legal conclusions of the Master *de novo* pursuant to Rule 53 (e) (4). See *De Costa v. Columbia Broadcasting System, Inc.,* 520 F.2d 499, 508-09 (1st Cir. 1975), cert. denied, 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976).A master may not

determine the merits of the legal issues. Compare *Stauble v. Warrob, Inc.*, 977 F.2d 690 (C.A.1 (Mass.), 1992).[1] Failure to pay occupancy fees are not a determination on the merits of Plaintiffs' claims. An order to dismiss is dispositive disposition, which is otherwise appealable to the U.S. First Circuit Court of Appeals and such a decision should not be made by a Special Master.

**Argument.**

The actions of the Special Master are neither constitutionally authorized nor authorized by statute nor by an order of this Court. These are several points this Court should weigh.

1. **Affirmative Relief was provided without a Hearing**. The action of the Special Master "ordering" the dismissal of the Plaintiff's complaint is a denial of the Plaintiffs' **D**ue Process right, as contained in the 5th and 14th Amendments of the U.S. Constitution. Plaintiffs have a right to have the so called order to pay a use and occupancy fee otherwise determined by a U.S. District Court Judge on a *de novo* basis. The use and

---

[1] *Stauble v. Warrob, Inc.*, 977 F.2d 690,694 (C.A.1 (Mass.), 1992).While it is axiomatic that the "judicial power of the United States must be exercised by courts having the attributes prescribed in Art. III," *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982) (plurality op.), federal judges handling civil calendars have long relied on assistants, such as magistrates and special masters, who do not possess the distinct attributes of Article III status.*** Although these assistants do not satisfy the criteria set by Article III for the exercise of judicial power, they may appropriately perform a wide variety of preparatory functions, e.g., overseeing discovery and spearheading pretrial factual inquiries in complicated controversies. They may also appropriately perform a variety of consummatory functions, e.g., superintending the execution of consent decrees and the implementation of structural injunctions.***When the issues referred to a master go beyond hard-to-measure damages or an accounting, however, the waters grow more turbid. In that event, only an "exceptional condition" can justify a reference. Id. The Supreme Court shed some light on the meaning of the term in La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957). *** The wisdom of La Buy is evident: crowded dockets and complex business disputes such as the one we confront today are dismayingly commonplace; thus, predicating access to auxiliary adjudicators on the incidence of such circumstances would likely trivialize Article III.***. The overriding consideration, applicable in this case, is that the Constitution prohibits us from allowing the nonconsensual reference of a fundamental issue of liability to an adjudicator who does not possess the attributes that Article III demands. Because Rule 53 cannot retreat from what Article III requires, a master cannot supplant the district judge. ***

occupancy fee is a form of affirmative relief not otherwise authorized by law or even requested by the Defendants or by the U.S. District Court in its appointment of the Special Master. A Special Master cannot make Rules allowing the taking of property[2]. Furthermore, there has been no post deprivation hearing after payment of the fees on those orders as required by Due Process Clause provided to the Plaintiff in which the taking of such use and occupancy money from the Plaintiff could have been challenged. ), *Goldberg* v. *Kelly*, 397 U.S. 254 (1970), *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780 (1971), *Fuentes* v.*Shevin,* 407 U.S. 67 (1972), *Bell* v. *Burson*, 402 U.S. 535 (1971), *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *Perry* v.*Sindermann,* 408 U.S.593  (1972), *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633 (1974), *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct.. 893, 47 L.Ed.2d 18 (1976), *Logan v. Zimmerman Brush*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

2. **Determination of Legal Issues are the only for the Court**. The U.S. District Court has Article III and subject matter jurisdiction over the Plaintiff's claims, which include, inter alia, the Plaintiff's 42 USC §1983 claim that foreclosure advertising does not provide a

---

[2]*Boddie v. Connecticut*, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971). In Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), for example—where a plaintiff's claim had been dismissed for failure to comply with a trial court's order—the Court read the "property" component of the Fifth Amendment's Due Process Clause **to impose "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause."** Id., at 209, 78 S.Ct., at 1094. See also Hammond Packing Co. v. Arkansas, 212 U.S. 322, 349-351, 29 S.Ct. 370, 379-380, 53 L.Ed. 530 (1909) (power to enter default judgment); Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) (same); Windsor v. McVeigh, 93 U.S. 274, 23 L.Ed. 914 (1876) (same). Cf. Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Similarly, the Fourteenth Amendment's Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be "the equivalent of denying them an opportunity to be heard upon their claimed right[s (Emphasis Added).

post determination hearing on the legality of the taking of the Plaintiff's resident and that Defendant's assignments and foreclosure filings are null and void under the provisions of chapter 11 of Title 34 of the R.I. General Laws. The Special Master is not allowed to determine those legal issues. The Court has no basis in law to authorize the Special Master to impose occupancy fees.

3. **Master has No Judicial Power**. The Special Master does not have Article III[3] authority to determine dispositive motions, such as a motion to dismiss. See *U.S., In re*, 816 F.2d 1083, 1092, (C.A.6, 1987). The Special Master had promised the parties that she would not address legal issues, yet the imposition of a use and occupancy fee is a legal determination. Dismissal assumes lack of jurisdiction. Failure to pay an occupancy fee does not deprive the U.S. District Court of its jurisdiction over the Plaintiff's claims.

4. **Use Fees have a Chilling Effect**. The use and occupancy fee places an undue burden on the Plaintiff and unconstitutionally chills the Due Process and First Amendment rights of Plaintiffs to advocate for a clear title and the removal of illegal liens imposed by the Defendants on the Plaintiffs' properties. The Occupancy fees place undue burdens on the Plaintiffs' access to justice. It is in effect a "poll tax" on the Plaintiffs' right to access to the United States Courts. Since the Magna Carta, plaintiffs have had an unabridged right to defend their homes against illegal seizures. Dismissal for failure to pay occupancy fees causes the loss of the Plaintiffs' "castle," their home.

5. **Equity Considerations disfavor Use Fees**. Occupancy fees favor protection of sham foreclosures by advertising through R.I.G.L. §34-11-22 by Defendants who have received assignments through the Mortgage Electronic Registration System, Inc. (MERS). MERS

---

[3] *Polin v. Dun & Bradstreet, Inc.*, 634 F.2d 1319,1326, Dissent, at 5 (C.A.10 (Okl.), 1980)."In general, the litigant has the right to have his case heard and determined by Article III courts."

8

is a name rental organization which brags on its web site that its sole purpose is to avoid the payment of the assignments fees of town and cities. MERS members are famous for using robo-signers to corrupt the land recording systems of the States. MERS based foreclosures cannot pass judicial scrutiny under R.I.G.L. §34-27-1. Many of the lawyers representing servicers and most of the Defendants are members of MERS who favor foreclosure by advertising through R.I.G.L.§34-11-22 because no one requires proof of their standing to foreclose. The Providence Journal staff does not examine the standing of MERS related Defendants to foreclose by advertising. Only judges examine the Defendants' conformance to chapter 11 of title 34 and to Due Process requirements. The Special Master should not take the side of the Defendants in this dispute. The Special Master suggestion that the imposition of such fees would show the creditworthiness of the Plaintiffs is at best a legislative suggestion, not a judicial idea. See Document #1343. Plaintiffs here are seeking justice, not a bank loan." "Creditworthiness" is not a judicial standard. It is a private standard for lending money.

6. **Rule 53 Limits Use Fees.** The actions of the Special Master imposing and enforcing a use and occupancy fee was not authorized the U.S. District Court Judge pursuant to Rule 53 in its orders creating the position of Special Master. There is also no authority within Rule 53 which authorizes the imposition of "use and occupancy fees". Further, the Special Master has not conducted an evidentiary hearing on noncompliance with the use and occupancy fee. Rule 53 does not authorize the Special Master to conduct a contempt

hearing on failure to pay. Plaintiffs have a right to have Plaintiff's basic judicial issues heard by the district judge de novo[4], not by a Special Master.

7. **Special Master's action was not based on Rule 37**. Neither party has been allowed discovery; thus Rule 37 sanctions of dismissal are not authorized and may not be used as a basis for dismissal. A use and occupancy fee is not a discovery order and not a basis for a dismissal.

8. **Special Master's action was not based on Rule 12.** The Defendants have not been allowed to file Rule 12 motions to dismiss and the Special Master is not party; and thus, the Special Master has no constitutional standing to file a 12 (b) motion or to order a 12 (b) dismissal or to file a Rule 37 motion for sanctions.

9. **Defendants Have no standing without the Mortgage Note**. The foreclosing Defendants have no proven subject matter standing to conduct any foreclosure authorized by either R.I.G.L§34-11-22 or by §34-27-1 since no Defendant has yet to produce a signed promissory note by the same entity to which the right to foreclosed was recorded under Rhode Island law.

10. **No more than 25% of net income should be required for use fees.** The basis for the factual computations of the use and occupancy fees are unfair and do not take into consideration the Plaintiff's income ability. No more than twenty five (25%) percent of the Plaintiff's net monthly income should be required for use and occupancy fees. It is in

---

[4] . *In re Bituminous Coal Operators' Ass'n, Inc.* 949 F.2d 1165, 1168 (D.C.Cir.1991) ("Rule 53 ... authorizes the appointment of special masters to *assist,* not to replace, the adjudicator, whether judge or jury, constitutionally indicated for federal court litigation"). The Court found that the references at issue "amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation." *La Buy,* 352 U.S. at 256, 77 S.Ct. 309.[16]

10

the public interest that the properties in question remain occupied and be allowed to produce income.

**Wherefore** Plaintiff prays that this Honorable Court reject use fees and deny and dismiss the recommendation of the Special Master that the complaints of the Plaintiffs be dismissed. The Plaintiffs have shown cause. (#1668)

Plaintiff
By their Attorney
/s/ Keven A. McKenna
Keven A. McKenna, #662
23 Acorn Street
Providence, R.I. 02903
401 273-8200 Tel
401 521-5820 –Fax
kevenm@kevenmckennapc.com

## CERTIFICATE OF SERVICE

I, Keven A. McKenna, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 4, 2012.

/s/ Keven A. McKenna